UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GANNON JOINT VENTURE LIMITED PARTNERSHIP, et al., | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) Case No. 4:07CV1242 JCH ) |
| MASONITE CORPORATION, et al., | ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Masonite Corporation ("Masonite") and International Paper Company's ("International Paper") Motion to Dismiss Count VI of the First Amended Complaint or, in the Alternative, Motion for More Definite Statement ("Motion to Dismiss"), filed March 28, 2008. (Doc. No. 54). The matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Gannon Joint Venture Limited Partnership ("GJVLP"), a Missouri limited partnership with its principal place of business in the State of Missouri, currently owns the Cedar Run apartment complex ("Cedar Run") in St. Louis, Missouri. (First Amended Complaint ("Complaint" or "Compl."), ¶¶ 1, 8). Plaintiff West Pointe Apartments, L.L.C. ("WPA"), a Missouri limited liability company with its principal place of business in the State of Missouri, currently owns the West Pointe apartment complex ("West Pointe") in St. Louis, Missouri. (Id., ¶¶ 2, 9). WPA acquired its interest in West Pointe from Plaintiff Gannon Partnership 19, L.P. ("GP19"), a Missouri limited partnership with its principal place of business in the State of Missouri, on March 11, 2002. (Id., ¶¶ 3, 9).[1]

---

[1] GP19 owned West Pointe from June 22, 1992, to March 11, 2002. (Compl., ¶ 10).

Defendant Masonite, a Delaware corporation authorized to do business in the State of Missouri, has manufactured and distributed a hardboard siding product known as "Stuccato" ("the Siding"). (Compl., ¶¶ 5, 12).[2] According to Plaintiffs, Masonite failed adequately to design, formulate, and/or test its hardboard Siding before distributing it as a purportedly durable and suitable residential siding product, and further failed to remove the Siding from the marketplace or take other remedial action in a timely manner upon learning of its defective nature. (Id., ¶ 12).[3]

Plaintiff The Gannon Development Company ("Gannon Development"), a Missouri corporation with its principal place of business in Missouri, provides general contracting construction services, among other services. (Compl., ¶¶ 4, 11). Non-party Charlie's Lumber & Supply, L.L.C., d/b/a O'Neil Lumber and Millwork ("O'Neil Lumber"), is an Illinois limited liability company authorized to do business in the State of Missouri. (Id., ¶ 7). At various times between approximately October, 1997, and December, 2000, Gannon Development purchased certain Siding from O'Neil Lumber on behalf of GJVLP, and installed the Siding on fifteen separate buildings in Phase II at Cedar Run. (Id., ¶ 22). Furthermore, at various times between approximately July, 1999, and November, 2000, Gannon Development purchased certain Siding from O'Neil Lumber on behalf of GP19, and installed the Siding on fourteen separate buildings in Phase III at West Pointe. (Id., ¶ 24).

---

[2] From approximately November, 1988, through August, 2001, Masonite was a wholly owned subsidiary of Defendant International Paper, a New York corporation authorized to do business in the State of Missouri. (Compl., ¶¶ 6, 20).

[3] Plaintiffs allege that beginning in 1980 or soon thereafter, Masonite was aware the Siding was subject to moisture invasion problems and premature failure due to its defective design. (Compl., ¶ 13). Plaintiffs maintain that despite this knowledge, Masonite continued to sell the Siding without correction, and in fact concealed the Siding's defective nature from the public. (Id.).

Plaintiffs allege that in or around June, 2005, the Siding at Cedar Run began to fail, as follows: swelling; deterioration of joint and ends; soft areas; and warping. (Compl., ¶ 23). Plaintiffs further allege the Siding at West Pointe began to fail in or around April, 2004, as follows: swelling; deterioration of joint and ends; and soft areas. (Id., ¶ 25). Plaintiffs filed their original Petition in this matter in Missouri State Court on January 23, 2007. (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Count VI or, in the Alternative, Motion for More Definite Statement ("Plaintiffs' Opp."), P. 8). Defendants removed the action to this Court on July 9, 2007. (Doc. No. 1). In the instant Complaint, filed January 3, 2008, Plaintiffs assert the following claims for relief: Pre-Sale Intentional Suppression (Count II[4]); Post-Sale Intentional Suppression (Count IV[5]); Breach of Express Warranty (Count VI); Breach of Implied Warranty--Merchantability (Count VII); Breach of Implied Warranty--Fitness for Particular Purpose (Count VIII); Unfair Trade Practices under Mo.Rev.Stat. § 407.020 (Count IX); Negligence (Count X); and Declaratory Judgment (Count XI). (Doc. No. 17, ¶¶ 30-64).

As stated above, Defendants filed the instant Motion to Dismiss Count VI of the First Amended Complaint or, in the Alternative, Motion for More Definite Statement, on March 28, 2008. (Doc. No. 54).

**STANDARD FOR MOTION TO DISMISS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable

---

[4] Count I of Plaintiffs' Complaint was intentionally omitted. (Doc. No. 17, P. 12).

[5] The parties stipulated to the dismissal with prejudice of Counts III and V of Plaintiffs' Complaint. (Doc. No. 41).

inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Id. at 1965 (citations omitted).

## DISCUSSION

As stated above, in Count VI of their Complaint, Plaintiffs allege Breach of Express Warranty. (Compl., ¶¶ 42-45). Under Missouri law, express warranties by the seller are created in relevant part as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Mo.Rev.Stat. §400.2-313(1)(a), (b) (1994).[6] Thus, "[t]o prevail on a claim of breach of express warranty, plaintiffs must demonstrate: 1) that there was a sale of goods; 2) the seller made a statement of fact about the kind or quality of [] those goods; 3) the statement of fact was a material factor inducing the buyer to purchase the goods; 4) the goods did not conform to that statement of fact; 5) the nonconformity injured the buyer; and 6) the buyer notified the seller of the nonconformity in a timely fashion." Mouser v. Caterpillar, Inc., 2000 WL 35552637 at *18 (E.D. Mo. Oct. 6, 2000), citing Stefl v. Medtronic, Inc., 916 S.W.2d 879, 882-83 (Mo. App. 1996).

---

[6] The Official Comment to Section 2-313 notes that, "'express' warranties rest on 'dickered' aspects of the individual bargain." See Official Comment, ¶ 1.

### I. <u>Limited Warranty</u>

In their Complaint, Plaintiffs first aver the limited warranty set forth in a publication entitled "Masonite Hardboard Siding Limited Warranties" (the "Limited Warranty"), attached to Plaintiffs' Complaint as Exhibit 1, created an express warranty running from Defendants to Plaintiffs. (Compl., ¶¶ 17, 43A). Upon consideration, the Court finds that with this claim, Plaintiffs fail to establish the elements of a claim for breach of express warranty, as they cannot demonstrate the Limited Warranty was a material factor inducing Plaintiffs to purchase the goods. Rather, in their response to Defendants' Motion to Dismiss, Plaintiffs admit they received no written warranty at the time they purchased and installed the Siding, and in fact only attempted to locate warranty information in 2005, after the Siding began to fail at Cedar Run. (Plaintiffs' Opp., PP. 1, 7, 13).[7] Defendants' Motion to Dismiss Plaintiffs' claim of breach of express warranty with respect to the Limited Warranty must therefore be granted, as Plaintiffs cannot establish that any affirmation of fact, promise, or description of the Siding contained therein became a "part of the basis of the bargain." <u>See</u> Mo.Rev.Stat. §400.2-313(1)(a), (b) (1994). <u>See also</u> <u>Collegiate Enterprises, Inc. v. Otis Elevator Co.</u>, 650 F.Supp. 116, 118 (E.D. Mo. 1986) ("Similarly [Plaintiff's] claim for breach of an express warranty under the Uniform Commercial Code as adopted by Missouri, Mo.Rev.Stat. § 400.2-313, fails to state a claim because there is no allegation that [Plaintiff] was aware of or made any decision on the basis of such a warranty given by [Defendant]."); <u>Amato v. Mapei Corp.</u>, 2005 WL 3406417 at *6 (M.D. Pa. Dec. 12, 2005) (finding it incongruous to allow a remote consumer to benefit from an express warranty

---

[7] Plaintiffs assert they were unable to locate warranty information at that time, and only received the written warranty in November, 2006, just prior to the filing of their Petition in Missouri State Court. (Plaintiffs' Opp., PP. 7, 13).

of which it was unaware); Goodman v. PPG Industries, Inc., 849 A.2d 1239, 1246 (Pa. Super. 2004) (same).[8]

## II. Advertising

In their Complaint, Plaintiffs further allege an express warranty was created by Masonite siding advertising (the "Advertising"), in particular, promotional materials found in the 1980 and 1990 editions of Sweet's Catalogue. (Compl., ¶¶ 15, 43A).[9] Plaintiffs continue to allege as follows:

43B. Plaintiffs properly stored, handled, installed and maintained the Siding.

43C. Following the failure of the Siding at Cedar Run and West Pointe, Plaintiffs notified Masonite in writing of said failure. To the extent that Plaintiffs failed to provide said written notice to Masonite within 60 days as contemplated in Exhibit 1, Masonite has excused and/or waived such purported condition, and/or Masonite is estopped from relying on any such purported material condition precedent, by reason of its acts and/or omissions set forth herein.

43D. Plaintiffs have satisfied all material conditions precedent on their part to be performed under the Express Warranty, or in the alternative, Masonite has excused and/or waived all such conditions, and/or Masonite is estopped from relying on any such material conditions precedent, by reason of its acts and/or omissions set forth herein.

44. Masonite materially breached the Express Warranty, as the Siding was defective, in that the Siding is not durable and long lasting, will rot, buckle, discolor, delaminate, is not sturdy, is not low maintenance, is not cost effective, and otherwise does not perform as represented and warranted by Masonite, resulting in the following conditions:

   a. Swelling;

   b. Deterioration of joint and ends;

---

[8] The case cited by Plaintiffs, Groppel Co., Inc. v. U.S. Gypsum Co., 616 S.W.2d 49 (Mo. App. 1981), is distinguishable, as it concerned an implied warranty of merchantability, not an express warranty.

[9] Under Missouri law, "[a] brochure, catalogue or advertisement may constitute an express warranty." Interco Inc. v. Randustrial Corp., 533 S.W.2d 257, 262 (Mo. App. 1976) (citations omitted).

      c.     Soft areas; and

      d.     Warping.

45. Masonite's material breach of the Express Warranty proximately caused actual damages to Plaintiffs, in amounts to be established at trial, but in any event in excess of the jurisdictional minimum.

(Compl., ¶¶ 43-45).

Upon consideration, the Court finds Plaintiffs' claim of breach of express warranty with respect to the Advertising suffers from the same infirmity as the Limited Warranty claim. In other words, because Plaintiffs do not allege they read the Advertising at issue prior to purchasing the Siding, they cannot demonstrate the Advertising constituted a material factor inducing Plaintiffs to purchase the goods. See Interco, 533 S.W.2d at 262 (holding that in order to become part of the basis of the bargain for purposes of §400.2-313, the catalogue, advertisement, or brochure must at least have been read). Plaintiffs do not include assertions disproving their claim regarding the Advertising, however, and so the Court will grant Plaintiffs until **Friday, May 30, 2008**, within which to file a Second Amended Complaint adding the proper allegations, if appropriate.[10]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count VI of the First Amended Complaint or, in the Alternative, Motion for More Definite Statement (Doc. No. 54) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs are granted until **Friday, May 30, 2008**, within which to file a Second Amended Complaint, curing the deficiency described in Section II, supra.

---

[10] The Court finds the remainder of Plaintiffs' allegations of breach of express warranty with respect to the Advertising sufficient for notice pleading purposes.

Dated this <u>14th</u> day of May, 2008.

                                                  /s/ Jean C. Hamiton
                                                  UNITED STATES DISTRICT JUDGE